# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3744

_____

| | | |
|---|---|---|
| Tyra Santucci, Individually, as | * | |
| Administratrix of the Estate of Charles | * | |
| A. Santucci, Sr., Deceased, and as | * | |
| Parent, Guardian and Next Friend of | * | |
| Charles Anthony Santucci, Jr., and | * | |
| John Matthew Santucci, | * | |
| | * | |
| Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas |
| Allstate Life Insurance Company, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 10, 2000

Filed: August 2, 2000

_____

Before RICHARD S. ARNOLD, HEANEY, Circuit Judges, and SIPPEL,[1] District Judge.

SIPPEL, District Judge.

_____

[1]The Honorable Rodney W. Sippel, United State District Judge for the Eastern District of Missouri, sitting by designation.

Allstate Insurance Company appeals from the district court's[2] decision reforming an insurance contract due to a mutual mistake of all the parties. We affirm.

Charles and Tyra Santucci were twice married and twice divorced. In October of 1994 they were not married but were living together with their children. A telemarketer for Allstate called their residence to sell an accidental death insurance policy. Allstate was marketing this insurance to SearsCharge account holders. The caller asked to speak to Charles Santucci. Tyra Santucci asked if she could take a message. The telemarketer told Tyra a little about the offer. Tyra told the caller that she would have to discuss the offer with Charles because it was his charge account. The telemarketer concluded the call by saying that she would mail some information. Instead of receiving information, Tyra Santucci received an Allstate accidental death policy, listing Tyra Santucci as the "primary insured." The policy was effective October 12, 1994, and covered the primary insured, the insured's spouse and all unmarried, dependent children under a certain age.

Although the policy named Tyra Santucci as the primary insured such a policy could only be issued to SearsCharge account holders. At the time that the policy was issued, Charles Santucci was the only account holder in the household. Premiums were charged to Charles Santucci's Sears credit card and he made the requested payments.

---

[2]The Honorable Henry L. Jones, Jr., United States Magistrate Judge for the Eastern District of Arkansas.

On August 3, 1996, Charles Santucci and one of Charles and Tyra Santucci's children were tragically killed in a motorcycle accident. Allstate paid the death benefit of $10,000 for the death of their son, but Allstate refused to pay a death benefit for Charles Santucci because he was not the spouse of the primary insured.

After a bench trial the district court found that a mutual mistake had been made and reformed the insurance contract to reflect the intentions of the parties. Allstate Insurance Company appeals the district court's decision to reform the policy. We review the district court's findings of fact for clear error and its conclusions of law de novo. Wilson v. Moog Automotive, Inc., 193 F.3d 1004, 1008 (8th Cir.1999).

The district court correctly determined that the contract was formed at the time the policy was received and accepted by Tyra and Charles Santucci. The district court further found by clear and convincing evidence that at the time the contract was formed there was a mutual mistake made by the parties because Tyra not Charles was named as the primary insured. Allstate had clearly intended to insure the SearsCharge account holder, Charles Santucci, along with his spouse and children. Tyra Santucci thought that the policy covered her, Charles, and their children.

Allstate's corporate designee testified in her deposition that Charles Santucci was the only individual in the Santucci household who was eligible to be the primary insured according to the terms of Allstate's master policy. Tyra Santucci was not an account holder or the spouse of an account holder at the time the policy

was issued. Allstate clearly made a mistake when it issued a policy in the name of Tyra Santucci instead of to Charles Santucci.

The Santuccis were also mistaken as to the terms of the policy actually issued by Allstate. It is undisputed that after her conversation with the Allstate telemarketer Tyra Santucci only expected to receive additional information about an insurance policy which she would then discuss with Charles. It was not Tyra Santucci's intention to receive an accidental death policy naming her as the primary insured. When she and Charles received and accepted the policy the Santuccis mistakenly thought that all of the family members were covered.

"Mutual mistake must be shown by clear and decisive evidence that, at the time the agreement is reduced to writing, both parties intended their written agreement to say one thing and, by mistake, it expressed something different. There must be a mistake by both parties, by reason of which both of them have done what neither intended; each must have labored under the same misconception in respect to the terms of the written instrument." Lambert v. Quinn, 798 S.W.2d 448, 449 (Ark. Ct. App. 1990). Both Allstate and the Santuccis intended the SearsCharge account holder, Charles Santucci, to be insured under the policy. It is clear that the policy naming Tyra instead of Charles as the primary insured was issued as a result of a mutual mistake. The district court correctly reformed the policy to properly reflect the intentions of the parties to have Charles Santucci listed as the primary insured.

Allstate also argues that the district court should not have permitted Tyra Santucci to intervene in her individual capacity and that as a result neither Tyra nor the Estate of Charles Santucci should be allowed to argue for reformation of the insurance contract.

This argument is nothing more than a procedural slip knot designed to keep anyone and everyone out of the case who possibly had standing to seek reformation of the policy. At a minimum the Estate of Charles Santucci had standing to bring this action. The right to seek reformation of an insurance policy is not limited to the person or persons named in the policy but may be exercised by a person not so named where reformation is sought to set forth his interest. 43 Am. Jur. 2d Insurance § 374 (1982). Tyra has also appeared in the case on behalf of her minor children who are insureds and beneficiaries under the policy. These children also had standing to sue for reformation. Allstate's argument that none of the parties has standing to sue for reformation is novel but without merit.

The judgment is affirmed.

A true copy.

Attest:

**CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.**